FRANK A. WEISER, (Bar No. 89780)
Attorney at Law
3460 Wilshire Blvd., Ste. 1212
Los Angeles, California 90010
(213) 384-6964 - (voice)
(213) 383-7368 - (fax)
maimons@aol.com - (e-mail)

Attorney for Plaintiffs
APARTMENT ASSOCIATION
OF GREATER LOS ANGELES,
in its representative capacity
on behalf of its association
members; CITY OF LOS ANGELES
AIHM HOTEL/MOTEL ASSOCIATION,
in its representative capacity  on behalf of
its association members; BALUBHAI G.
PATEL; HAROLD GREENBERG

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| APARTMENT ASSOCIATION OF GREATER LOS ANGELES, in its representative capacity  on behalf of its association   members; HYW Limited Partnership, C ITY OF LOS ANGELES HOTEL/MOTEL ASSOCIATION, in its representative capacity of behalf of its association members; BALUBHAI G. PATEL; HAROLD GREENBERG,<br><br>                    Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES, a municipal corporation; AND DOES 1 THROUGH 10 INCLUSIVE,<br><br>                    Defendants. | Case No. CV20-4479<br><br>**COMPLAINT FOR DAMAGES;  DECLARATORY AND INJUNCTIVE  RELIEF**<br><br>**[Violation of Federal  Civil Rights - 42 U.S.C.  Section 1983]**<br><br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs APARTMENT ASSOCIATION OF GREATER LOS ANGELES ,

in its representative capacity on behalf of its association members; CITY OF LOS ANGELES

AIHM HOTEL/MOTEL ASSOCIATION, in its representative capacity  on behalf of

its association members; BALUBHAI G. PATEL; HAROLD GREENBERG ("Plaintiffs," or

individually  "AAGLA," "AIHM," "PATEL," and "GREENBERG") hereby file the following

Complaint and state and allege as follows:

<u>JURISDICTION AND VENUE</u>

1.      Jurisdiction of the federal court exists pursuant to 28 U.S.C. Section 1331 and

28 U.S.C. Section 1343 (a)(3).  This action, which arises under the laws and Constitution of

the United States, specifically, under the Fifth and Fourteenth Amendments, and the Contract

Clause under Article I of the United States Constitution,  involves violations of federal law

actionable pursuant to 42 U.S.C. Section 1983.

2.      Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b) in that

Defendant CITY OF LOS  ANGELES ("Defendant" or "City"), is a public entity in this

District and the claims arose in this District.

<u>PARTIES</u>

3.      AAGLA is a trade association members consisting of apartment owners.  and

Southern California's leading advocate for affordable quality housing and housing issues

whose principal place of business is 621 Westmoreland Avenue, Los Angeles, CA 90005.

AAGLA sues herein in its representative capacity for its members who own and operate apartments in the City of Los Angeles and sue for declaratory and injunctive relief onlt.

4.     AIHM is a trade association consisting of hotel and motel owners and operators in the City of Los Angeles and whose principal place of business is in Los Angeles, CA. AIHM sues herein in its representative capacity for its members who own and operate hotel and motels in the City of Los Angeles and sue for declaratory and injunctive relief onlt.

5.     PATEL is a leading member of AIHM and, is at all times relevant herein, an owner and operator of multiple hotels and motels in the City of Los Angeles.

6.     GREENBERG is an attorney and leading member of AAGLA and, is at all times relevant herein, an owner and operator of apartments in the City of Los Angeles.

7.     The City is a municipal corporation formed and operating under its local charter and the laws of the State of California.

8.     The true names and capacities, whether individual, corporate, associate or otherwise, herein named as DOES 1 through 10, and persons heretofore unknown involved in the actions taken against plaintiffs are unknown to him at this time. Plaintiffs are informed and believe and based thereon alleges that each of the DOE defendants is responsible in some manner for the occurences herein referred to, and that plaintiffs' injuries and damages as herein alleged were proximately caused by those defendants. Plaintiffs sue said defendants by such fictitious names on the grounds that the true names and capacities of said defendants are unknown to them at this time. Plaintiffs will amend this complaint when the true names and capacities of said DOE defendants are ascertained. Each reference in this complaint to "defendant", "defendants" or a specifically named defendant also refers to defendants sued

3

under fictitious names.

9.     On April 8, 2014, the City passed Ordinance No. 182986 ("Ordinance") Ordinance. Through this ordinance, the City fundamentally transformed how solid waste would be collected from commercial establishments and multifamily dwellings in the City - moving from an open market, competitive system to a system that awarded waste haulers the exclusive right to provide collection services within their "franchise zones". The exclusive franchise system that ultimately resulted from the ordinance, was originally labeled "Zero Waste LA" or, more specifically, the "Zero Waste LA Exclusive Franchise Sysyem"; however , in or about June of 2017, the program was renamed as "recycLA," which is how the program is referred today.

10.     The ordinance requires that (i) all commercial establishments and multifamily dwellings subscribe to and pay for waste collection services; (ii) provides that the City may award exclusive franchise agreements for the provision of waste collection services to commercial establishments and multifamily dwellings; and (iii) makes it unlawful for anyone to provide collection services to commercial establishments and multifamily dwellings unless the person has a written franchise agreement with the City.  A copy of the ordinance is attached hereto as Exhibit "A".

11.     Prior to recycLA, commercial establishments and multifamily dwellings could select from any City permitted waste hauler, who would compete for business based on service and price. With recycLA, the City moved to an exclusive franchise system controlled by the City.

12.     The ordinance requires that each franchise agreement with a waste hauler include a negotiated annual franchise fee which is to be paid to the City by the respective franchisee, making the franchise agreements renewable annually by the City upon contingent on the payment of the annual franchise fee by the franchisee

13.     As a result of the ordinance, only seven (7) franchisees presently operate in the City, providing services under the ordinance to commercial establishments and multifamily dwellings.

13.     The recycLA program  has led to systematic abuses by the City, which continue until the present, and include but are not limited to, (i) awarding franchise agreements to a small limited amount of franchisees in private with staff members and city employees negotiating the agreements  and not in open public or City Council hearings or review by an appeal process; (ii) charging the franchisees annual franchise fees that benefit the City in revenue collected in the millions of dollars annually that are then passed on to the commercial establishments and multifamily dwellings subject to the ordinance in addition to collection charges for services rendered; (iii) allowing franchisees to add additional pass thru charges to commercial establishments and multifamily dwellings in addition to the base rates charged for in providing services.

14.     There is no mechanism under the ordinance which permits or allows the commercial establishments and multifamily dwellings subject to the ordinance to appeal the fees charged by the franchisees, or to permit a variance from the ordinance to negotiate with alternative waste haulers, and as a result of the ordinance it is unlawful under the

ordinance for plaintiffs to enter into waste hauling agreements with other waste haulers other than the ranchisees.

15.   As a result of the ordinance, AAGLA'S members and AIHM'S members, including PATEL and GREENBERG, who are subject to the ordinance, have seen their monthly trash hauling charges increase by approximately 200% to 400% of their trash hauling charges before the adoption of the ordinance.

16.   Such monthly trash hauling charges increases described above have continuously increased annually, from the adoption of the ordinance until the present for AAGLA'S members and AIHM'S members, including PATEL and GREENBERG, resulting in great economic hardship and losses to them. .

Based on the above facts, Plaintiff alleges the following claims:

## FIRST CLAIM FOR RELIEF

### (Violation of Civil Rights Under 42 U.S.C Section 1983 by All Plaintiffs Against All Defendants)

17..  Plaintiffs reallege and incorporate herein by reference to each and every allegation contained in Paragraphs 1 through 16, and all its subparts, inclusive, as set forth hereinabove.

.18 .  Plaintiffs are informed and believe, and based upon such information and belief alleges, that in doing all of the things herein mentioned, the City and defendants, and each of them, acted under color of the statutes, regulations, customs and usages of the City of Los Angeles, and the State of  California for purposes of "state action" and "color of law" under 42 U.S.C. Section 1983.

6

19.   Plaintiffs further are informed and believe, and based upon such information and belief allege, that by taking the actions hereinabove alleged in paragraphs 1-16 above, the City and defendants, and each of them, violates and further threatens to violate the constitutional and civil rights of Plaintiffs , in particular its individual rights under the Fifth  and Fourteenth Amendments  of the United States Constitution in violation of the United States Constitution Takings Clause; to be free from to and the substantive and procedural components of the Due Process Clause of the Fourteenth Amendment of the United States Constitution, the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and the Contract Clause; and under Article I of .the United States Constitution.

20.   The City's actions described in paragraphs 1-23 above were done pursuant to official policy, custom, or practice of the City.

21.   As a proximate result of the foregoing acts of defendants, and each of them, AAGLA'S members and AIHM'S members, and PATEL and GREENBERG, are threatened to suffer extreme hardship and damages, which damages include, to PATEL and GREENBERG,  economic and non-economic damages according to proof at trial but believed to be not less than $5,000,000.00, and entitling AAGLA and AIHM suing on behalf of its members, and PATEL and GREENBERG,  to appropriate declaratory and injunctive relief against all the defendants, that includes but is not limited to a permanent injunction preventing further operation of the ordinance; and to its reasonable attorneys fees under 42 U.S.C. section 1988.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

## FIRST CLAIM FOR RELIEF

1. For damages for PATEL and GREENBER according to proof at trial;

2. For declaratory and injunctive relief;

3. For attorney's fees pursuant to 42 U.S.C. Section 1988;

4. For costs of suit; and

5. For such other and further relief as the Court

deems just and proper.

DATED: May 20, 2020          LAW OFFICES OF FRANK A. WEISER

By: _____

FRANK A. WEISER, Attorney for Plaintiffs APARTMENT ASSOCIATION OF GREATER LOS ANGELES, in its representative capacity on behalf of its association members; CITY OF LOS ANGELESAIHM HOTEL/MOTEL ASSOCIATION, in its representative capacity on behalf of its association members; BALUBHAI G. PATEL; HAROLD GREENBERG

8

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial pursuant to F.R.C.P. 38.

DATED: May 20, 2020

LAW OFFICES OF FRANK A.
WEISER

By: _Frank A. Weiser_
FRANK A. WEISER, Attorney for
Plaintiffs APARTMENT ASSOCIATION
OF GREATER LOS ANGELES, in its
representative capacity on behalf of its
association members; CITY OF LOS
ANGELESAIHM HOTEL/MOTEL
ASSOCIATION, in its representative capacity
on behalf of its association members;
BALUBHAI G. PATEL; HAROLD
GREENBERG

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT "A"**

# ORDINANCE NO. 182986

An ordinance retitling Chapter VI, Article 6; adding new Sections 66.03 and 66.33 to 66.33.11 of the Los Angeles Municipal Code relating to the collection of solid waste from commercial establishments and multifamily dwellings; amending Sections 66.00, 66.00.1, 66.01, 66.02, 66.08.1, 66.08.3 through 66.08.6, 66.17.1, 66.23 through 66.25, 66.27 through 66.30, and 66.32; and repealing Sections 66.01.1, 66.04, 66.06, 66.07, 66.08.2, 66.09, 66.10, 66.18 through 66.22; and 66.26.

## THE PEOPLE OF THE CITY OF LOS ANGELES
## DO ORDAIN AS FOLLOWS:

Section 1.  Article 6 of Chapter VI of the Los Angeles Municipal Code is retitled to read as follows:

### ARTICLE 6

### SOLID WASTE COLLECTION

Sec. 2.  Section 66.00 of the Los Angeles Municipal Code is amended to read as follows:

### SEC. 66.00.  DEFINITIONS.

For the purpose of this Article, the following words and phrases are defined and shall be construed as set out here, unless it is apparent from the context that they have a different meaning:

1. **Board** shall mean the City of Los Angeles Board of Public Works.

2. **Bureau** shall mean the Bureau of Sanitation of the City of Los Angeles or its duly authorized representative.

3. **City** shall mean the City of Los Angeles.

4. **Collection Services** shall mean the collection, transportation and delivery for processing or disposal of solid waste from commercial establishments and multifamily dwellings.

5. **Commingled Recyclables** shall mean recyclables that have been separated or kept separate from other solid waste at the point of generation for the purpose of additional sorting or processing for recycling or reuse in order to return the material to the economic mainstream in the form of raw material for new, reused, or reconstituted products which meet the quality standards necessary to be used in the marketplace. Commingled recyclables shall not consist of construction and demolition waste.

1

6. **Commercial Establishment** shall mean all real property in the City, except residential premises and premises that receive solid waste disposal service from the City, upon which for-profit or not for-profit activity is conducted, including but not limited to manufacturing, transportation, retail sales, wholesale operations, services, hotel or motel operations, education, or other businesses or institutional activity.

7. **Construction and Demolition Waste** shall mean solid waste that results directly from construction, remodeling, repair, demolition, or deconstruction of buildings and other structures, does not contain hazardous waste, and contains no more than one percent (1%) putrescible wastes by volume, calculated on a monthly basis. Construction and demolition waste includes, but is not limited to, asphalt, concrete, Portland cement, brick, lumber, wallboard, roofing material, ceramic tile, pipe, glass, carpet or associated packing.

8. **Director** shall mean the Director of the bureau of Sanitation of the city of Los Angeles.

9. **Dwelling Unit** shall mean one or more rooms, one of which is a kitchen, designed for occupancy by one family for living and sleeping purposes.

10. **Gross Receipts** shall mean those receipts defined as gross receipts in Los Angeles Municipal Code Section 21.00(a) generated by the collection of solid waste including, but not limited to, service, container rental, disposal and processing charges. For purposes of Sections 66.32.1 through 66.32.5, gross receipts shall not be applicable to receipts generated by the collection and sale of source-separated materials or commingled recyclables.

11. **Hazardous Waste** shall mean any waste as defined in California Health and Safety Code Section 25117.

12. **Multifamily Dwelling** shall mean any building, structure, unit or location designed for residential occupancy, exclusive of "Single Family Dwelling" and dwelling units that receive solid waste disposal service from the City.

13. **Organics** shall mean compostable solid waste that is source separated and placed in a container for collection. Organics include, but are not limited to, grass, leaves, tree branches, clean wood free of paint, nails or any treatment, food scraps, food soiled boxes and paper.

14. **Person** shall mean natural person, business, contractor, joint venture, joint stock company, firm, partnership, association, club, company, corporation, business trust, or organization, or the manager, employer, agent, servant, officer, or employee of any of them. Person shall not mean the City of

2

Los Angeles, or any of its constituent entities, departments, boards, employees or officers.

15. **Recyclables** shall mean solid waste that is capable of being recycled or re-reused in the marketplace, whether source separated or commingled with other solid waste.

16. **Residential Premises** shall mean single family dwellings and multifamily dwellings.

17. **Self-Hauler** shall mean a person who is not primarily engaged in the business of collection, removal or transportation of solid waste but in the course of performing the person's primary business function incidentally transports solid waste. Examples of self-haulers include, but are not limited to, gardeners, landscapers and household cleanup service firms. A person who collects, removes or transports construction and demolition waste is not a self-hauler under any circumstance, but rather a solid waste hauler subject to all of the requirements applicable to solid waste haulers.

18. **Single Family Dwelling** shall mean a building designed for residential occupancy, and containing one or two dwelling units.

19. **Solid Waste** shall mean all putrescible and nonputrescible solid, semisolid, and liquid wastes, including garbage, trash, refuse, paper, rubbish, ashes, industrial wastes, construction and demolition waste, abandoned vehicles and parts thereof, discarded home and industrial appliances, dewatered, treated, or chemically fixed sewage sludge which is not hazardous waste, manure, vegetable or animal solid and semisolid wastes, and other discarded solid and semisolid wastes.

"Solid waste" does not include any of the following wastes:

(i)     Hazardous waste;

(ii)     Radioactive waste regulated pursuant to Part 9 of Division 104 of the California Health and Safety Code;

(iii)     Medical waste regulated pursuant to Part 14 of Division 104 of the California Health and Safety Code;

(iv)     Pharmaceutical waste as defined in California Health and Safety Code Section 117748.

20. **Solid Waste Disposal Facility** shall mean a facility fully permitted under applicable local, state, and federal laws and regulations to accept and dispose of solid waste.

21.    **Solid Waste Hauler** shall mean any person engaged in the business of providing for the collection, removal or transportation of solid waste.

22.    **Source-Separated Material** shall mean recyclables that have been separated or kept separate from other solid waste at the point of generation and sorted by material type, such as wood, metal, glass, concrete, or organics, without being commingled with other solid waste, including recyclables. To qualify as source-separated material, each type of material must be transferred in a separate container to a recycling center.

Sec. 3. Section 66.00.1 of the Los Angeles Municipal Code is retitled to read as follows:

### SEC. 66.00.1. SOLID WASTE SERVICES.

Sec. 4. Section 66.00.1(a)(1) of the Los Angeles Municipal Code is amended to read as follows:

1.    The collection of household solid waste combined in one or more containers by a single pickup except when more than one pickup is required by the Board and approved by Council resolution, on a regularly scheduled basis, but not to provide for the collection of commercial solid waste.

Sec. 5. Section 66.00.1(b) of the Los Angeles Municipal Code is amended to read as follows:

(b)    It is the policy of the City of Los Angeles to dispose of solid waste collected by the City, including metals, in land reclamation sites owned and operated or otherwise controlled by the City or in City-owned incinerators when economically feasible, or by contractual arrangement where appropriate. Contractual arrangements involving consideration in excess of $5,000 shall be approved by the Council by ordinance or resolution, except in the case of an emergency as determined by the Director.

Sec. 6. Section 66.00.1(e) of the Los Angeles Municipal Code is amended to read as follows:

(e)    The Board shall adopt rules and regulations, not inconsistent with this Article, to effectuate the purposes and intent of this Section and the further provisions of this Article. Any such rule or regulation pertaining to solid waste collection shall be approved by the Council.

Sec. 7. Section 66.00.1(f) of the Los Angeles Municipal Code is amended to read as follows:

(f)    The Board, subject to the approval of the Council in each instance by resolution, may from time to time institute and conduct one or more pilot programs within an area or areas of the City designated by the Board for the separate collection and disposal of solid waste on a regularly scheduled basis, for the purpose of studying costs to the City and other factors of such program or programs compared with the policies set forth in Subsection (a) of this Section.

Sec. 8.  Section 66.01 of the Los Angeles Municipal Code is retitled and amended to read as follows:

## SEC. 66.01. SOLID WASTE COLLECTION.

No person shall remove or convey any solid waste upon or along any street in this City, provided, however, that the provisions of this section shall not apply to any person in the employ of this City who shall be assigned by the Board to the work of solid waste disposal or to any person with whom this City has entered into, or may hereafter enter into, a contract for the collection, removal and disposal of solid waste or to any employee of such contractor during the time his contract shall be in force, and provided further that solid waste collection and disposal contractors serving neighboring municipalities, County sanitation districts, State or Federal institutions, or any person in the employ of any such governmental agency may haul garbage over the streets of this City after having first obtained a permit therefor pursuant to Section 66.32, *et seq.*

Sec. 9.  Section 66.01.1 of the Los Angeles Municipal Code is hereby repealed.

Sec. 10.  Section 66.02 of the Los Angeles Municipal Code is retitled and amended to read as follows:

## SEC. 66.02. SOLID WASTE CONTAINER SPECIFICATIONS.

It shall be the duty of every owner, manager, or person in possession, charge or control of any commercial establishment, and every person occupying a residential premises within the City to provide, and at all times to keep containers for holding solid waste.  Each container shall be constructed to be nonabsorbent, watertight, vector-resistant, durable, easily cleanable, and designed for safe handling.  Each such container and its cover shall be made of such materials as may be approved for such use by the Board and by the City Council.  The cover shall not be removed except when necessary to place solid waste therein or to remove solid waste therefrom.  Each container and its cover shall be kept cleaned on the outside from accumulating grease and decomposing material and shall be of an adequate size and in sufficient numbers to contain, without overflowing, all the solid waste that a household or other establishment generates within the designated removal period.  Each such container when filled shall not exceed reasonable lifting weights for an average physically fit individual except where mechanical loading systems are used. Any such vessel, tank or receptacle shall comply with Part 1301 of Title 16 of the Code of Federal Regulations to the extent that such Part is applicable to any such vessel, tank or receptacle.

Sec. 11. Section 66.03 is added to the Los Angeles Municipal Code to read as follows:

## SEC. 66.03. SOLID WASTE SERVICE REQUIRED.

(a) No person shall keep any solid waste, or allow any solid waste, excluding organics used for composting or mulch, to remain upon any premises within the City for more than seven days. All solid waste shall be placed in containers that meet the requirements of Section 66.02.

(b) Owners of commercial establishments and multifamily dwellings or the generator of solid waste at such premises or the agent of the owner or generator shall subscribe to and pay for collection services provided by a solid waste hauler authorized to provide such services pursuant to the provisions of this Article.

(c) The minimum level of service to which the owner, generator or agent shall subscribe shall be the number and size of solid waste containers suitable for garbage collection and the frequency of collection which is necessary for the removal and disposal of all solid waste generated at the premises, excluding commingled recyclables and source-separated material, in a seven-day period. Such minimum level of service shall be determined by the owner, generator or agent and the solid waste hauler. In the event the owner, generator or agent and the solid waste hauler do not agree on the minimum level of service necessary, such determination shall be made by the Director.

(d) All commercial establishments shall have collection services for source-separated materials or commingled recyclables.

Sec. 12. Sections 66.04, 66.06 and 66.07 of the Los Angeles Municipal Code are hereby repealed.

Sec. 13. Section 66.08.1 of the Los Angeles Municipal Code is retitled amended to read as follows:

## SEC. 66.08.1. SOLID WASTE DISPOSAL FACILITY FRANCHISES OR CONTRACTS.

Should the City at any time award a franchise or contract for the disposal of solid waste, then no person, other than the franchisee or contractor, shall thereafter be permitted to provide services covered by such franchise or contract within the granted franchise or contract area except as otherwise permitted by the Board.

Sec. 14. Section 66.08.2 of the Los Angeles Municipal Code is hereby repealed.

Sec. 15. Section 66.08.3 of the Los Angeles Municipal Code is retitled amended to read as follows:

## SEC. 66.08.3. OPERATION OF SOLID WASTE DISPOSAL FACILITIES.

(a) It is unlawful for any person to own, establish, operate or carry on the business of a solid waste disposal facility in the City unless, at the City's sole option, such person has been granted a non-exclusive franchise by the City Council.

(b) Section (a) does not apply to any person who owns or operates a solid waste disposal facility operating as of January 1, 1999, under a valid conditional use permit or other authorizing permit issued by the City, until any one of the following events occurs:

(1) the conditional use permit or other authorizing permit expires, or

(2) the conditional use permit or other authorizing permit is renewed, or

(3) the conditional use permit or other authorizing permit is modified.

Sec. 16. Section 66.08.4 of the Los Angeles Municipal Code is retitled to read as follows:

## SEC. 66.08.4. SOLID WASTE DISPOSAL FRANCHISE TERMS AND CONDITIONS.

Sec. 17. Section 66.08.5 of the Los Angeles Municipal Code is retitled and amended to read as follows:

## SEC. 66.08.5. SOLID WASTE DISPOSAL FACILITY FRANCHISE FEES.

The City shall impose a franchise fee each year equal to 12 percent of the annual gross receipts from fees and charges collected by the operator of the solid waste disposal facility.

Sec. 18. Section 66.08.6 of the Los Angeles Municipal Code is retitled to read to read as follows:

## SEC. 66.08.6. OTHER SOLID WASTE DISPOSAL FACILITY FRANCHISE PROVISIONS.

Sec. 19. Sections 66.09 and 66.10 of the Los Angeles Municipal Code are hereby repealed.

Sec. 20. Section 66.17.1 of the Los Angeles Municipal Code is retitled and amended to read as follows:

## SEC. 66.17.1. PROOF OF SOLID WASTE COLLECTION SERVICE.

Irrespective of any other provision of this Code, the manager or person in charge of, or in control of, any solid waste of any residential premises or commercial establishment shall furnish written proof, whether in the form of contracts or receipts, to any appropriate municipal authority on request that said premises maintains collection services that collects solid waste generated from said premises in a manner in keeping with current health regulations and in compliance with the requirements of this Article and other provisions of the Los Angeles Municipal Code.

Sec. 21. Sections 66.18 through 66.22 of the Los Angeles Municipal Code are hereby repealed.

Sec. 22. Section 66.23 of the Los Angeles Municipal Code is retitled and amended to read as follows:

## SEC. 66.23. SOLID WASTE VEHICLES – USE OF STREETS.

(a)    No person shall permit any vehicle hauling or used for hauling or carrying any solid waste or other nauseous or offensive substance to remain in or upon any street longer than is necessary for loading and hauling such substance to its destination or permit any such vehicle to be in a filthy or offensive condition, or to remain uncovered when in transit upon streets or near public places.

(b)    No person shall remove or convey any solid waste or other nauseous or offensive substance along any street, except in watertight vessels, receptacles or carriers.

Sec. 23. Section 66.24 of the Los Angeles Municipal Code is amended to read as follows:

## SEC. 66.24. REPLACING FALLEN MATERIAL.

No person removing or conveying any solid waste shall fail, refuse or neglect to replace immediately in any container any solid waste that shall have fallen therefrom, in or upon any street or in or upon any premises.

Sec. 24. Section 66.25 of the Los Angeles Municipal Code is retitled and amended to read as follows:

## SEC. 66.25. DEPOSITING SOLID WASTE ON STREETS OR IN THE LOS ANGELES RIVER PROHIBITED.

(a)    No person shall deposit or cause to be deposited any solid waste of any kind whatsoever upon or in any street, or upon any premises in this City, or in the Los Angeles River.

8

(b)     Any person whose identifying information is found in or who is otherwise responsible for the deposit of solid waste of any kind whatsoever, upon or in any street, shall be responsible for depositing it on the public right-of-way and shall be subject to administrative penalties as defined in Subsection (c).

(c)     The first violation of Subsection (b) in a calendar year is subject to warning or an administrative monetary penalty not to exceed $500.00. Subsequent violations in the same calendar year will result in a second penalty not to exceed $750.00 for the second violation after receiving the initial $500.00 penalty. The penalty for the third administrative violation in a calendar year is $1000.00. More than three administrative fines in one calendar year shall result in the violation being charged as a misdemeanor in Superior Court and subject to all penalties applicable to criminal violations. The Bureau is authorized to assess a processing fee established by the Board for all citations with an administrative monetary penalty. All noncriminal enforcement actions are subject to the administrative hearing process as mandated in the California Government Code Section 53069.4, as now existing and as may be amended.

Sec. 25. Section 66.26 of the Los Angeles Municipal Code is hereby repealed.

Sec. 26. Section 66.27 of the Los Angeles Municipal Code is amended to read as follows:

## SEC. 66.27. RULES AND REGULATIONS – EFFECT OF NON-COMPLIANCE WITH.

The collection of solid waste not prepared and placed for collection in accordance with the rules and regulations adopted by the Board may be rejected by the City.

Sec. 27. Section 66.28 of the Los Angeles Municipal Code is retitled and amended to read as follows:

## SEC. 66.28. SOLID WASTE – TAMPERING WITH.

No person, other than the owner thereof, his agents or employees, or an officer or employee of this City or any person holding a contract with this City for the collection, management and/or disposal of solid waste, shall tamper with or remove any solid waste, solid waste container or the contents thereof from any location where the same had been placed by the owner thereof or his agent, whether or not such container conforms to requirements or description set forth in the rules and regulations of the Board.

Sec. 28. Section 66.29 of the Los Angeles Municipal Code is retitled and amended to read as follows:

## SEC. 66.29.  CITY EMPLOYEES – USE OF SOLID WASTE.

No employee of this City shall remove or dispose of, for said employee's individual use or benefit, any of the contents of any container used for the collection, removal or disposal of solid waste.

Sec. 29.  Section 66.30 of the Los Angeles Municipal Code is amended to read as follows:

## SEC. 66.30.  CONSTRUCTION OF ARTICLE.

Nothing contained in this Article shall be deemed to conflict with any section of this Code regulating the collection, removal or disposal of solid waste, but any such sections of this Code and any law shall each be so construed as to give effect to every provision thereof and each shall be deemed to be independent of the other.

Sec. 30.  Section 66.32 of the Los Angeles Municipal Code is retitled amended to read as follows:

## SEC. 66.32.  PURPOSE.

In order to meet the diversion goals of AB 939 and the City of Los Angeles which is Zero Waste by 2025, solid waste haulers, contractors and recyclers shall register with the City to obtain a permit. As used in this Section and in Sections 66.32.1 through 66.32.5, the following terms shall have the meanings set forth below:

    1.    **AB 939** shall mean the State of California's Integrated Waste Management Act of 1989, as may be amended from time to time, and as set forth in California Public Resources Code Sections 40050, *et seq.*, and implementing regulations of the Department of Resources Recycling and Recovery (CalRecycle).

    2.    **AB 939 Compliance Permit** shall mean a permit issued pursuant to the provisions of Subsection (a) of Section 66.32.1.

    3.    **Appellant** shall mean a person who files a written request for a hearing pursuant to the provisions of Subdivision (1) of Subsection (d) of Section 66.32.3 of this Article.

    4.    **Certified Construction and Demolition Waste Processing Facility** shall mean a waste processing facility, operating lawfully pursuant to all applicable permits and possessing valid and current certification from the City of Los Angeles, that accepts construction and demolition waste for the purpose of recovering reusable and recyclable materials and disposing of non-recyclable residual materials.

5. **Contractor** shall mean any Person who enters into a contract for any construction or demolition project that requires a permit from the Department of Building and Safety.

6. **Permittee** shall mean a person issued an AB 939 Compliance Permit pursuant to the provisions of Subsection (a) of Section 66.32.1.

Sec. 31. Section 66.33 is added to the Los Angeles Municipal Code to read as follows:

## SEC. 66.33. PURPOSE .

Under the City's RENEW LA Plan, the City committed reaching Zero Waste by diverting 70% of the solid waste generated in the City by 2013, diverting 90% by 2025, and becoming a zero waste city by 2030. State law currently requires at least 50% solid waste diversion and establishes a state-wide goal of 75% diversion by 2020. Moreover, state law requires mandatory commercial recycling in all businesses and multifamily complexes and imposes additional reporting requirements on local agencies, including the City. In order to meet these requirements and goals, increasing recycling and diversion in the commercial and multifamily waste sectors is imperative. The commercial and multifamily sectors produce most of the City's solid waste. Currently, a significant amount of commercial and multifamily solid waste generated in the City, including recyclables and organics, is going to landfills, resulting in unnecessary greenhouse gas emissions. The City has a responsibility under state law to ensure effective and efficient waste and recycling service for its businesses and residents. It will most successfully fulfill that responsibility, and also meet its own Zero Waste policy goals, by ensuring that its solid waste, including recyclables and organics, are collected, transported and processed in a manner that reduces environmental and social impacts on the City and the region.

An exclusive, competitive franchise system for the collection, transportation and processing of commercial and multifamily solid waste will aid the City in meeting its diversion goals by, among other things: (i) requiring franchisees to meet diversion targets; (ii) increasing the capacity for partnership between the City and solid waste haulers; (iii) allowing the City to establish consistent methods for diversion of recyclables and organics; (iv) increasing the City's ability to track diversion, which will enable required reporting and monitoring of state mandated commercial and multifamily recycling; (v) increasing the City's ability to ensure diversion quality in the processing facilities handling its waste and recyclables; and (vi) increasing the City's capacity to enforce compliance with federal, state, county, and local standards.

An exclusive, competitive franchise system will also have other beneficial effects, including reducing adverse environmental impacts such as unnecessary solid waste truck traffic, emissions and street impacts, protecting ratepayers, ensuring high customer service standards, and increasing solid waste hauler accountability.

While the move to an exclusive franchise system will generate many benefits for the City and its residents, it will also increase the risk that a labor dispute will interfere with collection services. To protect the City's interest in efficient and uninterrupted collection services, the City will require franchisees to produce evidence that they are parties to written, enforceable agreements that prohibit labor organizations and their members from engaging in picketing, work stoppages, boycotts or other economic interference with collection services.

## SEC. 66.33.1. DEFINITIONS.

As used herein and in Sections 66.33 to 66.33.17, the following terms shall have the meanings set forth below:

1.     **Clean Fuel Vehicles** shall mean those vehicles that meet or exceed the requirements of Southern California Air Quality Management District Rule 1193, as now existing and as may be amended.

2.     **Customer** shall mean any individual, firm, partnership, joint venture, association, fraternal organization, corporation, estate trust, business trust, receiver, trustee, executor, administrator, syndicate, the United States, any state, any county, city and county, municipality, district or other political subdivision of any state or of the United States, or any other group or combination acting as a unit.

3.     **Franchise Agreement** shall mean a written contract between the Bureau and a franchisee setting forth the terms and conditions under which the franchisee shall perform collection services in the City.

4.     **Franchisee** shall mean a solid waste hauler granted an exclusive franchise to provide collection services in a franchise zone.

5.     **Franchise Zone** shall mean a geographic area of the City within which a franchisee shall provide collection services pursuant to the terms of a franchise agreement.

6.     **Labor Peace Agreement** shall mean an enforceable agreement between a franchisee, or a franchisee's subcontractor, and a labor organization (as defined by 29 U.S.C. §152(5)) that represents or seeks to represent the franchisee's or subcontractor's employees providing collection services and that contains provisions under which the labor organization for itself and its members agrees to refrain from engaging in any picketing, work stoppages, or any other economic interference with the franchisee's performance of collection services.

7.     **On-location Filming Waste** shall mean solid waste generated and collected at a commercial film production permitted pursuant to Section 12.22 A.13. of this Code or Section 22.350 of the Los Angeles Administrative Code.

8. **Studio** shall mean one or more adjacent parcels of real property occupied by a motion picture or television production and distribution enterprise and containing sound stages totaling no less than 50,000 square feet in area and 18 feet in height designed for motion picture or television production and utilized by that enterprise specifically for such purpose.

## SEC. 66.33.2. EXCLUSIVE FRANCHISE FOR COLLECTION SERVICES.

(a) The City may award contracts for collection services for commercial establishments and multifamily dwellings through an exclusive franchise agreement authorizing and obligating the holder to provide collection services within a franchise zone.

(b) A franchisee's exclusive right to provide collection services shall not include the right to collect the following materials, the collection of which is not prohibited by this Article:

(1) Solid waste removed from a commercial establishment or multifamily dwelling by a self hauler;

(2) Construction and demolition waste;

(3) Solid waste collected by the City;

(4) On-location filming waste.

(c) Any franchisee may contract with a studio for collection services regardless of the franchise zone where the studio is located.

## SEC. 66.33.3. UNLAWFUL ACTIVITIES.

(a) **Provision of Collection Services.**

Except as provided in Sections 66.33.2(b) through (c) and Section 66.33.3(b), it is unlawful for any person to provide collection services to a commercial establishment or multifamily dwelling within a franchise zone unless a written franchise agreement therefor has been executed between such person and the City, and such agreement is in full force and effect.

(b) **Transition Period.**

The City, in its sole discretion and consistent with state law, may authorize a solid waste hauler possessing a valid permit issued pursuant to Section 66.32, *et seq.*, to continue providing collection services in a franchise zone to the extent necessary to meet the needs of any customer in that zone until the franchisee is able to perform the collection services.

### SEC. 66.33.4.  FRANCHISE ZONES.

The Bureau shall divide the territory within the City into eleven (11) franchise zones, the designation of which shall be subject to the approval of the Board and City Council.  Three (3) of the franchise zones shall be designed as "single" zones, which shall not be granted in combination with any other franchise zone.

### SEC. 66.33.5.  FRANCHISE AGREEMENT FEES.

The Bureau shall include in each franchise agreement a negotiated annual franchise fee to be paid to the City by the respective franchisee.

### SEC. 66.33.6.  MINIMUM FRANCHISE AGREEMENT STANDARDS.

The following minimum standards shall apply to all franchises granted under this part, and shall be made binding terms of all franchise agreements:

(a)    **Required Collection Services.**

During the term of the franchise agreement and subject to its terms and conditions, each franchisee shall collect, transport, and deliver for processing or disposal all solid waste generated at all commercial establishments and multifamily dwellings located within that franchise zone.

(b)    **Clean Fuel Vehicles.**

All vehicles used by a franchisee to provide collection services under a franchise agreement shall at all times be in compliance with all applicable air pollution control laws and regulations, including but not limited to the California Air Resources Board "Diesel Particulate Matter Control Measure for On-Road Heavy Duty Residential and Commercial Solid Waste Collection Vehicle Diesel Engines" and South Coast Air Quality Management District Amended Rule 1193.

(c)    **Labor Peace Agreement.**

As a condition for the grant of a franchise agreement, a condition precedent to any franchisee or subcontractor performing collection services, and as an ongoing, material condition of the franchise agreement, each franchisee shall provide satisfactory evidence that it, and any subcontractor who will provide collection services, are a party to labor peace agreement(s) with any labor organization that represents any group of the franchisee's or subcontractor's employees who are or will be involved in providing collection services, and with any labor organization that seeks to represent any group of a franchisee's or subcontractor's employees who are or will be involved in providing collection services, under the following limitation:

(1)   This Subsection does not require an employer to recognize a particular labor organization.

(2)   This Subsection does not require an employer to enter into a collective bargaining agreement establishing the substantive terms and conditions of employment.

(3)   This Subsection is not intended to, and shall not be interpreted to, enact or express any generally applicable policy regarding labor/management relations, or to regulate those relations in any way.

(4)   This Subsection is not intended to provide a preference for any outcome in the determination of employee preference regarding union representation.

(d)   **Processing and Disposal.**

A Franchisee shall deliver all recyclables and organics collected from commercial establishments and multifamily dwellings exclusively to facilities certified by the City pursuant to Section 66.33.8.

(e)   **Diversion.**

(1)   Each franchisee shall provide every customer within its franchise zone a container specifically designated for the collection of recyclables.

(2)   Each franchisee shall offer every multifamily dwelling within its franchise zone a container specifically designated for the collection of organics.

(3)   All franchise agreements shall require franchisees to meet specific landfill disposal reduction requirements.

(f)   **Compliance with Living Wage and Responsible Contractor Requirements.**

Each franchisee shall comply with all requirements of an "Employer" under the City's Living Wage Ordinance, Los Angeles Administrative Code Section 10.37, et. seq. Each franchise agreement is hereby deemed a "contract" for purposes of the City's Responsible Contractor Program, Los Angeles Administrative Code Section 10.40, et seq., and each franchisee shall comply with all requirements of a "Contractor" thereunder.

(g)   **Whistleblower Protection.**

A franchisee shall not retaliate against an employee who, in good faith, has made a protest or raised a complaint against some practice of the franchisee on the basis of a

reasonable belief that the practice is in violation of any provision of this Article or other applicable laws. A franchisee will not retaliate against an employee who discloses or threatens to disclose to a supervisor or to the City or another public body any activity, policy, or practice of the franchisee that the employee reasonably believes is in violation of this Article or other applicable laws.

## SEC. 66.33.7. REVENUE FROM SALE OF RECYLABLES.

The Bureau and franchisees shall negotiate, and all franchise agreements shall include, provisions addressing revenue sharing from the sale of recyclables by franchisees and processing facilities.

## SEC. 66.33.8. CERTIFICATION OF PROCESSING FACILITIES.

(a)     The Board may certify for a five-year period facilities to accept solid waste collected by franchisee's providing collection services under a franchise agreement under criteria established by the Bureau and approved by the Board. Facilities shall be inspected by the City prior to certification, and each certification shall be conditioned on the facility granting the City the right to inspect the facility during the period of certification to verify compliance with the terms of certification.

(b)     The City may suspend or revoke certification of a facility upon 30 days notice by issuance of a notice of suspension or notice of revocation, if the facility fails to comply with any of the terms and conditions specified in the certification or in this Code, under the process set forth in Section 66.32.3(d).

## SEC. 66.33.9. PERMIT REQUIREMENT.

Nothing in Sections 66.33 through 66.33.8 relieves any franchisee from the requirement to obtain and maintain a permit pursuant to Sections 66.32 through 66.32.5 of this Article or any other permit or license otherwise required by law for the provision of such services.

## SEC. 66.33.10. SEVERABILITY.

If any part or provision of this Section or the application of this Section to any person or circumstance is found to be unconstitutional or otherwise invalid by any court of competent jurisdiction, the remainder of this Section, including the application of such part or provisions to other persons or circumstances, shall not be affected by such holding and shall continue in full force and effect, and to this end, the provisions of this Section are severable.

Sec. 32.  The City Clerk shall certify to the passage of this ordinance and have it published in accordance with Council policy, either in a daily newspaper circulated in the City of Los Angeles or by posting for ten days in three public places in the City of Los Angeles:  one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall; one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall East; and one copy on the bulletin board located at the Temple Street entrance to the Los Angeles County Hall of Records.

I hereby certify that the foregoing ordinance was introduced at the meeting of the Council of the City of Los Angeles ⌐APR 0 1 2014 , and was passed at its meeting of ⌐APR 0 8 2014 .

HOLLY L. WOLCOTT, Interim City Clerk

By _____
                                                          Deputy

Approved   ·4/15/14

_____
                                                          Mayor

Approved as to Form and Legality:

MICHAEL N. FEUER, City Attorney

By _____
       JOHN A. CARVALHO
       Deputy City Attorney

Date    3/14/14

File No.  10-1797-S16

M:\Muni Counsel\ORDINANCES\Solid Waste Collection DRAFT 3-11-14.doc

## DECLARATION OF POSTING ORDINANCE

I, MARIA VIZCARRA, state as follows: I am, and was at all times hereinafter mentioned, a resident of the State of California, over the age of eighteen years, and a Deputy City Clerk of the City of Los Angeles, California.

Ordinance No. 182986 – Citywide Exclusive Franchise System for the Municipal Solid Waste Collection and Handling Program - a copy of which is hereto attached, was finally adopted by the Los Angeles City Council on April 8, 2014, and under the direction of said City Council and the City Clerk, pursuant to Section 251 of the Charter of the City of Los Angeles and Ordinance No. 172959, on April 18, 2014 I posted a true copy of said ordinance at each of the three public places located in the City of Los Angeles, California, as follows: 1) one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall; 2) one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall East; 3) one copy on the bulletin board located at the Temple Street entrance to the Los Angeles County Hall of Records.

Copies of said ordinance were posted conspicuously beginning on April 18, 2014 and will be continuously posted for ten or more days.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 18th day of April, 2014 at Los Angeles, California.

Maria Vizcarra, Deputy City Clerk

Ordinance Effective Date: May 28, 2014
Rev. (2/21/06)

Council File No. 10-1797-S16