O

𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 ℭ𝔬𝔲𝔯𝔱
ℭ𝔢𝔫𝔱𝔯𝔞𝔩 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 ℭ𝔞𝔩𝔦𝔣𝔬𝔯𝔫𝔦𝔞

| | |
|---|---|
| APARTMENT ASSOCIATION OF GREATER LOS ANGELES, in its representative capacity on behalf of its association members; HYW, Limited Partnership, CITY OF LOS ANGELES HOTEL/MOTEL ASSOCIATION, in its representative capacity on behalf of its association members; BALUBHAI G. PATEL; HAROLD GREENBERG, | Case № 2:20-CV-04479-ODW (JEMx) |
| | **ORDER GRANTING MOTION TO DISMISS [15]** |
| Plaintiffs, | |
| v. | |
| CITY OF LOS ANGELES, a municipal corporation, and DOES 1-10 INCLUSIVE, | |
| Defendants. | |

## I.      INTRODUCTION

Defendant City of Los Angeles (the "City") moves to dismiss Plaintiffs' First Amended Complaint ("FAC").  (Mot. to Dismiss FAC ("Motion" or "Mot."), ECF No. 15.)  The matter is fully briefed.  (*See* Opp'n, ECF No. 18; Reply, ECF No. 21.) For the reasons discussed below, the Motion is **GRANTED**.[1]

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.    BACKGROUND

Plaintiffs[2] Apartment Association of Greater Los Angeles ("AAGLA"), in its representative capacity on behalf of its association members, City of Los Angeles AIHM Hotel/Motel Association ("AIHM"), in its representative capacity on behalf of its association members, Balubhai G. Patel, and Harold Greenberg challenge the constitutionality of the City's Ordinance No. 182986 ("Ordinance"), enacted on April 8, 2014.  (FAC ¶¶ 9, 21.)  As relevant here, the Ordinance (i) requires that all commercial establishments and multifamily dwellings subscribe to and pay for waste collection services; (ii) provides that the City may award exclusive franchise agreements for the provision of waste collection services to commercial establishments and multifamily dwellings; and (iii) makes it unlawful for anyone to provide collection services to commercial establishments and multifamily dwellings unless the person has a written franchise agreement with the City.  (*Id.* ¶ 10; FAC Ex. A ("Ordinance") § 66.33, ECF No. 13-1.)

Plaintiffs have several grievances with the Ordinance.  According to Plaintiffs, the Ordinance transformed what was once a competitive market for waste hauling into a limited franchise system, with only seven franchisees currently operating.  (*Id.* ¶¶ 9, 11, 13-1.)[3]  As a result, Plaintiffs "have seen their monthly trash hauling charges increase by approximately 200% to 400%" as compared to before the Ordinance was passed.  (*Id.* ¶ 15.)  The Ordinance also requires those subject to its provisions to provide, upon request and "without a court order, subpoena, or consent," proof of compliance with the Ordinance and other health regulations.  (*Id.* ¶ 17.)  Ordinance violations are punishable under Los Angeles Municipal Code section 11.00.  (*Id.* ¶ 18.)  And Plaintiffs complain that "[t]here is no mechanism . . . to appeal the fees

[2] There is an apparent discrepancy between the case caption's identified parties and the FAC's listed plaintiffs.  (*See* FAC ¶¶ 3–6.)  Plaintiffs' Notice of Interested Parties includes only those plaintiffs listed in the FAC's allegations.  (Notice of Interested Parties, ECF No. 3.)  Accordingly, the Court assumes that the caption is erroneous.

[3] The FAC includes two paragraphs labeled "13."  For sake of clarity, the Court refers to the first paragraph 13 as 13-1 and the second paragraph 13 as 13-2.

charged by the franchisees, or to permit a variance . . . to negotiate with alternative waste haulers." (*Id.* ¶ 14.)

Plaintiffs initially asserted a single cause of action against the City for violation of civil rights under 42 U.S.C. § 1983, and the City moved to dismiss the Complaint. (*See generally* Compl., ECF No. 2; Mot. to Dismiss Compl., ECF No. 12.)  Plaintiffs then filed the FAC, which again includes only a "single" cause of action under § 1983, for various violations of (1) the Fifth Amendment's Takings Clause, (2) the Fourteenth Amendment's Due Process and (3) Equal Protection Clauses, (4) the Contract Clause of Article I, section 10 of the Constitution, (5) the First Amendment's Petition Clause, and (6) the Fourth Amendment's Search and Seizure Clause.  (FAC ¶ 21.)  The City now moves to dismiss all of these claims.  (*See* Mot.)

## III.      LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim.  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  But factual "allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  Testing the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff.  *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).  However, a court need not blindly accept

conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

A court dismissing a complaint should provide leave to amend if the complaint could be saved by amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *see also* Fed. R. Civ. P. 15(a)(2) ("The Court should freely give leave when justice so requires."). Reasons to deny leave to amend include "bad faith, undue delay, prejudice to the opposing party, and/or futility." *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (quoting *William O. Gilly Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 669 n.8 (9th Cir. 2009)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). "A party cannot amend pleadings to 'directly contradict an earlier assertion made in the same proceeding.'" *Airs Aromatics, LLC v. Op. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (brackets omitted) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)).

## IV.    DISCUSSION

The City moves to dismiss the FAC on the grounds that (1) several alleged violations are barred by the applicable statute of limitations, and (2) as a whole, Plaintiffs' claims fail as a matter of law. (*See* Mot.) Because the Court agrees that Plaintiffs' claims fail on the merits regardless of the statute of limitations argument, the Court turns straight to those issues.[4]

### A.    Fifth Amendment Taking

Plaintiffs fail to allege a taking under the Fifth Amendment. The Fifth Amendment states that "property [shall not] be taken for public use, without just

---

[4] The Court briefly notes, however, that in California, § 1983 claims must be brought within two years after accrual of a cause of action. *Canatella v. Van De Kamp*, 486 F.3d 1128, 1132 (9th Cir. 2007). And in the case of facial challenges asserting the Takings Clause, substantive due process, the Equal Protection Clause, and the Contract Clause, the statute's enactment date serves as the accrual date. *See Guggenheim v. City of Goleta*, 638 F.3d 1111, 1119 (9th Cir. 2010) (takings); *Scheer v. Kelly*, 817 F.3d 1183, 1187 (9th Cir. 2016) (substantive due process); *Rancho de Calistoga v. City of Calistoga*, No. C 11-05015 JSW, 2012 WL 2501075, at *3 (N.D. Cal. June 27, 2012) (equal protection); *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998) (contract clause). Thus, as the Ordinance was passed in 2014, it does appear that Plaintiffs' facial challenges are time-barred.

compensation."  U.S. Const. amend. V.  As is relevant here,[5] "a regulatory taking occurs when the value or usefulness of private property is diminished by a regulatory action that does not involve a physical occupation of the property."  *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 965 (9th Cir. 2003) (internal quotation marks and brackets omitted).  The three types of regulatory takings involve (1) permanent physical invasions of property, (2) complete deprivation of all economically beneficial use of property, and (3) all other regulatory actions as governed by the standards set forth in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 124 (1978).  *See Cedar Point Nursery v. Shiroma*, 923 F.3d 525, 531 (9th Cir. 2019).  Under the third category, courts must consider "[1] the regulation's economic impact on the claimant, [2] the extent to which the regulation interferes with distinct investment-backed expectations, and [3] the character of the government action."  *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018) (brackets in original).

In this case, the Ordinance does not amount to a regulatory taking.  To start, the Ordinance does not result in any permanent physical invasions of property, nor does it completely deprive any property of all economically beneficial use.  It simply results in Plaintiffs having to pay more for trash hauling services.  (FAC ¶ 15.)  Thus, the Court turns to the *Penn Central* factors, which also do not support finding that the Ordinance constitutes a taking.

The first *Penn Central* factor requires courts to "compare the value that has been taken from the property with the value that remains in the property."  *Colony Cove*, 888 F.3d at 445 (quoting *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497 (1987).  "If an owner possesses a full bundle of property rights, the destruction of one strand of the bundle is not a taking, because the aggregate must be viewed in its entirety."  *Id.* (internal quotation marks omitted); *accord Killgore v. City*

---

[5] Plaintiffs do not allege a physical taking; they contend only that the Ordinance constitutes a regulatory taking.  (*See* Opp'n 19–21.)

*of S. El Monte*, No. 2:19-cv-00442-SVW-JEM, 2020 WL 4258584, at \*6 (C.D. Cal. Apr. 24, 2020).   Here, even accepting all factual allegations as true, the economic impact of the Ordinance affects a strand or two in the full bundle of Plaintiffs' property rights.   Plaintiffs allege that their trash hauling expenses have increased by approximately 200% to 400%, as compared to their expenses before adoption of the Ordinance.   (FAC ¶ 15.)   "But the mere loss of some income because of regulation does not itself establish a taking."   *Colony Cove*, 888 F.3d at 451.   Considering the Ninth Circuit has "observed that diminution in property value because of governmental regulation ranging from 75% to 92.5% does *not* constitute a taking," *id.* (citing *MHC Financing Ltd. Partnership v. City of San Rafael*, 714 F.3d 1118, 1127–28 (9th Cir. 2013) (emphasis added)), Plaintiffs here fail to plausibly allege that the Ordinance, simply by increasing Plaintiffs' trash hauling costs, is so economically burdensome that it is "functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain," *id.* (quoting *Lingle v. Chevron U.S.A. Inc.*, 554 U.S. 528, 539 (2005)).   Thus, this factor suggests the Ordinance does not constitute a regulatory taking.

As to the second *Penn Central* factor, "a purported distinct investment-backed expectation must be objectively reasonable" to form the basis for a taking claim.   *Id.* at 452.   "[W]hat is relevant and important in judging reasonable expectations is the regulatory environment at the time of the acquisition of the property." *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 634 (9th Cir. 2020) (internal quotation marks omitted).   "Those who do business in [a] regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end." *Id.* (internal quotation marks and alterations omitted).   For instance, "those who buy into a regulated field such as the mobile home park industry cannot object when regulation is later imposed." *Rancho de Calistoga v. City of Calistoga*, 800 F.3d 1083, 1091 (9th Cir. 2015) ("[W]e decline to hold that a landlord whose building or park existed before the enactment of rent control necessarily suffers a taking when rent

control is implemented."). Similarly, here, those who buy into ownership of commercial buildings or multi-family residences cannot reasonably expect to never be subject to regulation regarding waste disposal. "Courts in literally hundreds of reported cases have upheld the authority of local governments to monopolize and control local garbage collection by eliminating or restraining competition among private collectors." *Hybud Equip. Corp. v. City of Akron*, 654 F.2d 1187, 1192 (6th Cir. 1981), *judgment vacated on other grounds*, 455 U.S. 931 (1982). Thus, this factor also suggests the Ordinance is not a regulatory taking.

As to the third and final *Penn Central* factor (the character of the government action), "a taking may more readily be found when the interference with property can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Colony Cove*, 888 F.3d at 454 (internal quotation marks and brackets omitted). Here, the City argues that the Ordinance "promotes the common good by improving the public health and welfare of the City by increasing recycling and landfill diversion, and by protecting the environment." (Mot. 19 (citing Ordinance § 66.33).) Plaintiffs do not address this issue in their Opposition.[6] Regardless, the Court agrees with the City. The Ordinance is much more an adjustment of the benefits and burdens of economic life to promote the common good than a physical invasion of property. Accordingly, this factor also suggests the Ordinance is not a regulatory taking.

In light of the above, Plaintiffs fail to allege any regulatory taking. Considering Plaintiffs fail to suggest any colorable argument in their Opposition regarding this issue, and having reviewed the Ordinance itself, the Court finds that amendment of this claim would be futile. Thus, Plaintiffs' Fifth Amendment taking claim is **DISMISSED with prejudice**.

---

[6] "[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue." *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011).

**B.      Equal Protection Clause**

Plaintiffs fail to state a claim under the Equal Protection Clause.  "The Equal Protection Clause directs that 'all persons similarly circumstanced shall be treated alike.'"  *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (quoting *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)).  "Laws alleged to violate the equal protection clause are generally subject to one of three levels of 'scrutiny' by courts: strict scrutiny, intermediate scrutiny, or rational basis review."  *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 543 (9th Cir. 2004).  Strict scrutiny applies to laws that "discriminate against a suspect class, such as a racial group, or when they discriminate based on any classification but impact a fundamental right, such as the right to vote." *Id.* (citations omitted).  Intermediate scrutiny applies to laws that "discriminate based on certain other suspect classifications, such as gender."  *Id.*   "All other laws are subject to rational basis review."  *Id.* (citing *Fitzgerald v. Racing Ass'n*, 539 U.S. 103, 106–07 (2003)).

"Social and economic legislation . . . that does not employ suspect classifications or impinge on fundamental rights must be upheld against equal protection attack when the legislative means are rationally related to a legitimate governmental purpose."  *Hodel v. Indiana*, 452 U.S. 314, 331 (1981); *accord Long Beach City Emps. Ass'n v. City of Long Beach*, 41 Cal. 3d 937, 948 (1986).  But when a legislation's classifications "disadvantage a 'suspect class'" or "impinge upon the exercise of a 'fundamental right,'" "it is appropriate to enforce the mandate of equal protection by requiring the State to demonstrate that its classification has been precisely tailored to serve a compelling governmental interest."  *Plyler*, 457 U.S. at 216–17.  Here, Plaintiffs do not allege that the Ordinance affects a suspect class or a fundamental interest, so rational basis review applies.

Under rational basis review, the appropriate question is whether the difference in treatment between classifications "rationally furthers a legitimate state interest." *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992).   The classification set forth in the

Ordinance must be afforded "a strong presumption of validity, and those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314–15 (1993) (internal quotation marks and citations omitted). Moreover, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1155 (9th Cir. 2004) (quoting *Beach Commc'ns*, 508 U.S. at 315). Indeed, "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *Id.*

Here, the Ordinance's classification easily passes the rational basis standard of review. The Ordinance contemplates that "commercial and multifamily sectors produce most of the City's solid waste," and "a significant amount . . . is going to landfills, resulting in unnecessary greenhouse gas emissions." (Ordinance § 66.33.) This provides a rational basis for targeting commercial and multifamily buildings with the Ordinance, which seeks to increase recycling efforts, divert trash from overflowing landfills, and reduce the environmental impact of solid waste collection. Indeed, several courts "have explicitly described why a municipality's use of an exclusive franchise for waste collection is a rational choice that is neither arbitrary nor capricious." *Jonna Corp. v. City of Sunnyvale*, No. 17-CV-00956-LHK, 2017 WL 2617983, at *9 (N.D. Cal. June 16, 2017) (collecting cases); *see, e.g.*, *G. Fruge Junk Co. v. City of Oakland*, 637 F. Supp. 422, 425 (N.D. Cal. 1986) (denying equal protection challenge to exclusive franchise agreement for waste hauling). For these reasons, the Court finds that no amendment could cure this deficiency, and Plaintiffs' Equal Protection Clause claim is **DISMISSED with prejudice**.

**C.    Substantive Due Process**

Plaintiffs fail to allege a violation of substantive due process. "The Due Process Clause of the Fourteenth Amendment includes 'a substantive component that

protects certain individual liberties from state interference.'" *Franceschi v. Yee*, 887 F.3d 927, 937 (9th Cir. 2018) (brackets omitted) (quoting *Mullins v. Oregon*, 57 F.3d 789, 793 (9th Cir. 1995)).  "When reviewing a [substantive due process] challenge to a legislative act that does not infringe on a fundamental right, rational basis review applies, under which [courts] need only determine whether the legislation has a conceivable basis on which it might survive constitutional scrutiny." *Id.* at 939 (internal quotation marks omitted) (citing *Dittman v. California*, 191 F.3d 1020, 1031 (9th Cir. 1999))."

Here, like the Ordinance's classification, the Ordinance itself passes rational basis review.  It is reasonably conceivable that the City possesses legitimate interests in increasing recycling, diverting trash from landfills, and reducing the environmental impact of waste collection.  (*See* Ordinance § 66.33.)  The Ordinance rationally advances these legitimate interests by seeking to increase reliability and monitoring of waste haulers while reducing environmental impacts.  (*See id.* §§ 66.33, 66.33.6(b), 66.33.6(d), 66.33.6(e)); *see also Jonna Corp.*, 2017 WL 2617983, at *9 ("Without an exclusive franchise, a competitive 'race to the bottom' with respect to waste collection may occur, in which competing waste collectors cut corners to the detriment of public health."); *G. Fruge Junk Co.*, 637 F. Supp. at 425 (denying substantive due process challenge to exclusive franchise agreement for waste hauling).  For these reasons, the Court finds that no amendment could cure this deficiency, and Plaintiffs' substantive due process claim is also **DISMISSED with prejudice**.

**D.   Contract Clause**

Plaintiffs fail to allege a violation of the Contract Clause.  The Contract Clause states that "[n]o state shall . . . pass any . . . Law impairing the Obligation of Contracts."  U.S. Const. art. I, § 10.  "Generally, legislation which impairs the obligations of *private* contracts is tested under the contract clause by reference to a rational-basis test; that is, whether the legislation is a 'reasonable' means to a 'legitimate public purpose.'" *Ass'n of Surrogates & Sup. Ct. Reps. v. New York*,

940 F.2d 766, 771 (2d Cir. 1991) (quoting *U.S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 22–23 (1977)).  "Unless the [city] itself is a contracting party, as is customary in reviewing economic and social regulation, courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." *Energy Rsrvs. Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 412–13 (1983) (internal quotation marks, citations, and alterations omitted).  Here, because Plaintiffs allege the Ordinance interferes with private contracts, the Court applies a rational basis review with respect to their Contract Clause claim.  And as already explained above, the Ordinance survives rational basis scrutiny.  *See supra* Part IV.C.; *Jonna Corp.*, 2017 WL 2617983, at *9; *G. Fruge Junk Co.*, 637 F. Supp. at 425.  Again, the Court finds that no amendment could cure this deficiency, and Plaintiffs' Contract Clause claim is therefore **DISMISSED with prejudice**.

**E.     Procedural Due Process**

Plaintiffs fail to allege a violation of procedural due process.  "The due process clause of the Fourteenth Amendment protects individuals against governmental deprivations of life, liberty or property without due process of law."  *Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1260 (9th Cir. 1994).  "For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.'"  *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972).

The basis of Plaintiffs' procedural due process claim is somewhat unclear, but it appears that Plaintiffs rely on at least one of two theories—first, that they should have been given notice and a hearing before the Ordinance was enacted, and second, that they should be given notice and a hearing before having to provide evidence of compliance with the Ordinance.  (*See* FAC ¶ 21; Opp'n 17.)

The first theory fails because "governmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individual notice and hearing; general notice

as provided by law is sufficient." *Halverson*, 42 F.3d at 1261.  In other words, "if the 'action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law.'" *Hotel & Motel Ass'n of Oakland*, 344 F.3d at 969 (quoting *Halverson*, 42 F.3d at 1260).  Here, the Ordinance is a law of general applicability affecting a broad geographic area and a complete range of businesses; it is clearly a legislative act rather than adjudicatory or administrative government action.  *See id.*  The Ordinance was brought before the City Council at open hearings on April 1, 2014, and passed on April 8, 2014.  (Ordinance at 17.)  The Ordinance was posted conspicuously for at least ten days in three public places beginning April 18, 2014.  (*Id.* at 18.)  When the City Council exercised its legislative functions in this lawful manner, Plaintiffs "received all the process that was due."  *Hotel & Motel Ass'n of Oakland*, 344 F.3d at 970.[7]

The second theory fails because Plaintiffs fail to allege deprivation of a constitutionally protected liberty or property interest.  "A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."  *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).  As to the first prong, "[a] constitutionally protected property interest must be 'created and its dimensions defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'"  *Crawford v. Antonio B. Won Pat Int'l Airport Auth.*, 917 F.3d 1081, 1090 (9th Cir. 2019) (alterations omitted).  As explained throughout this Order, Plaintiffs fail to point to

---

[7] Although the City does not raise a statute-of-limitations argument against Plaintiffs' procedural due process claim, it seems that this claim would be similarly barred by the two-year statute of limitations insofar as Plaintiffs complain about having been deprived of notice and a hearing *before* the Ordinance was enacted in 2014.  *See Action Apartment Ass'n Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1027 (9th Cir. 2007) ("[T]he [California two-year] limitations period applies to all § 1983 claims, regardless of the civil right asserted.").

any such right entitling Plaintiffs to constitutional protection which has been violated. Thus, Plaintiffs fail to allege any violation of procedural due process. The Court further finds that no amendment could cure these deficiencies. Accordingly, Plaintiffs' Procedural Due Process claim is **DISMISSED with prejudice**.

## F.    Petition and Grievances Clause

Plaintiffs fail to state a claim under the Petition and Grievances Clause. "The First Amendment provides in relevant part that 'Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances.'" *WMX Techs., Inc. v. Miller*, 197 F.3d 367, 372 (9th Cir. 1999) (quoting U.S. Const. amend. I). "The protections afforded by the Petition Clause have been limited . . . to situations where an individual's associational or speech interests are also implicated." *Id.* Here, Plaintiffs do not allege any facts showing that the Ordinance impacts any associational or speech interests. (*See generally* FAC.) In fact, Plaintiffs did not respond to any of the arguments raised by the City with respect to this claim. (*See generally* Opp'n.) The Court treats Plaintiffs' failure to oppose these issues as waiving and abandoning this claim. *See Stichting Pensioenfonds ABP*, 802 F. Supp. 2d at 1132; *supra* note 6. Accordingly, Plaintiffs' claim under the Petition and Grievances Clause is **DISMISSED with prejudice**.

## G.    Fourth Amendment Search and Seizure

Plaintiffs fail to allege a violation of the Fourth Amendment because they fail to establish standing to bring such a challenge, making any determination of constitutionality unnecessary.[8] Under Article III, the Court's jurisdiction is limited to cases and controversies, and "[s]tanding is an essential, core component of [that]

---

[8] In regard to this claim, the City also relies on Rule 12(b)(1), which provides for dismissal of a complaint for lack of subject-matter jurisdiction. (Mot. 6, 22.) "Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). When a motion to dismiss attacks subject-matter jurisdiction on the face of the complaint, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). The party asserting jurisdiction bears the burden of showing that federal jurisdiction is proper. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

requirement." S*an Diego Cnty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  To have standing, Plaintiffs must demonstrate an injury-in-fact to a legally protected interest that is concrete and particularized and actual or imminent, a causal connection between their injury and the conduct complained of, and a likelihood the injury will be redressed by a favorable decision.  *Id.*  Under this standard, "[t]he mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III" because no injury has occurred. *Stoianoff v. Montana*, 695 F.2d 1214, 1223 (9th Cir. 1983).  Such is the case here, where Plaintiffs merely point to a potential injury rather than an injury-in-fact.

A plaintiff can still establish standing without a present injury-in-fact by showing a pre-enforcement challenge is appropriate, but "the mere 'possibility of criminal sanctions applying does not of itself create a case or controversy.'"  *San Diego Cnty. Gun Rts. Comm.*, 98 F.3d at 1126 (quoting *Boating Indus. Ass'ns v. Marshall*, 601 F.2d 1376, 1385 (9th Cir. 1979)).  Rather, to assert a pre-enforcement challenge, plaintiffs must show a '*genuine* threat of *imminent* prosecution.'"  *Id.* (quoting *Wash. Mercantile Ass'n v. Williams*, 733 F.2d 687, 688 (9th Cir. 1984)). Determination of such a threat is based on three factors: "[1] whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, [2] whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and [3] the history of past prosecution or enforcement under the challenged statute."  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000).

Here, Plaintiffs do not allege any facts supporting a pre-enforcement challenge. They allege that they "are required to furnish written proof, whether in the form of contracts or receipts, to the City *upon request*, and without a court order, subpoena, or consent, that their properties maintain collection services that complies [sic] with the requirements of the ordinance and current health regulations."  (FAC ¶ 17 (emphasis

added).)   Further, they allege that violation of the Ordinance "is unlawful and is further are [sic] subject to Los Angeles Municipal Code ('LAMC') section 11.00 which imposes severe criminal and civil penalties for anyone who violates provisions of the LAMC."   (*Id.* ¶ 18.)   But these allegations merely identify a threat of enforcement that is "theoretically possible" and "wholly contingent upon the occurrence of unforeseeable events."   *See Thomas*, 220 F.3d at 1141.   The mere possibility of enforcement, without more, is insufficient to confer standing under the "genuine and imminent" standard.   *See id.* ("The landlords do not at this time confront 'a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.'" (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979))).

Moreover, Plaintiffs do not address this issue of standing to bring their Fourth Amendment claim whatsoever.   Again, failure to respond to an argument within a Motion to Dismiss is tantamount to waiver and abandonment.   *See Stichting Pensioenfonds ABP*, 802 F. Supp. 2d at 1132; *supra* note 6.   Accordingly, for all these reasons, Plaintiffs' claim for a violation of the Fourth Amendment is **DISMISSED with prejudice**.

## H.   Unconstitutional Conditions Doctrine

Lastly, Plaintiffs attempt to raise the "unconstitutional conditions doctrine" for the first time in their Opposition.   (Opp'n 17–19.)   This doctrine states that the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interest."   *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Never mind the fact that Plaintiffs do not assert any such claim in their FAC, Plaintiffs also fail to identify a governmental benefit that is being denied, as "waste hauling collection" is not a benefit provided by the City.   Furthermore, the unconstitutional conditions doctrine is inapplicable here because, as explained above, Plaintiffs fail to allege any violation of their constitutional rights.   "Absent a [constitutional] right that Plaintiffs are forced to waive, Plaintiffs cannot state an unconstitutional conditions

claim." *Hotop v. City of San Jose*, No. 18-CV-02024-LHK, 2018 WL 4850405, at *7 (N.D. Cal. Oct. 4, 2018) (citing *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 612 (2013)).  Thus, the unconstitutional conditions doctrine does not provide reason to grant leave to amend, either.

## V.   CONCLUSION

For the reasons discussed above, the City's Motion to Dismiss is **GRANTED**. (ECF No. 15.)  Plaintiffs' FAC is **DISMISSED with prejudice**.  The Court will issue Judgment.


**IT IS SO ORDERED.**


June 1, 2021

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**